In the

# United States Court of Appeals
## for the Fourth Circuit

KAREN RENEE PRESTON,

*Plaintiff-Appellant,*

v.

BRIAN ROBERT GRIMES;
WALMART TRANSPORTATION, LLC,

*Defendants-Appellees,*

and

FRANKLIN COUNTY PUBLIC SCHOOLS; SCHOOL SYSTEMS
OF VIRGINIA GROUP SELF-INSURANCE ASSOCIATION,

*Intervenors.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT ROANOKE

_____

BRIEF OF APPELLEES

_____

Matthew Nis Leerberg
Troy D. Shelton
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>21-2149</u>      Caption: <u>Preston v. Grimes and Walmart Transportation, LLC</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Walmart Transportation, LLC (This is the spelling of the Walmart defendant in the operative complaint.</u>
(name of party/amicus)

<u>The proper spelling of that entity is "Wal-Mart Transportation, LLC.")</u>

who is _____<u>appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Walmart, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☑YES ☐NO
      If yes, identify all such owners:
      Walmart, Inc.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Matthew Nis Leerberg          Date: 10/28/2021

Counsel for: Walmart Transportation, LLC

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE ................................................................2

    A.    A Dangerous Intersection .......................................................2

    B.    Ms. Preston's Negligence .......................................................4

    C.    Ms. Preston Crashed into the Tractor-Trailer .......................8

    D.    The Collision.........................................................................16

    E.    Trial .......................................................................................18

SUMMARY OF THE ARGUMENT .......................................................19

ARGUMENT ....................................................................................21

    I.    The Standard of Review Is Highly Deferential ...................21

    II.    The Evidence Supports a Jury Finding that Ms. Preston Proximately Caused the Accident by Making a Blind Right Turn..........................................................................23

    III.    The Evidence Supports a Jury Finding that Ms. Preston Proximately Caused the Accident by Failing to Look Left Again Before Turning ........................................................26

        A.    Had Ms. Preston looked left a second time, she would have seen the tractor-trailer already in the intersection.................................................................29

        B.    A reasonable person would have recognized what the other eyewitnesses recognized...............................37

CONCLUSION .................................................................................43

i

STATEMENT REGARDING ORAL ARGUMENT ................................ 43

CERTIFICATE OF COMPLIANCE ........................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A Helping Hand, LLC v. Baltimore Cnty.*,
  515 F.3d 356 (4th Cir. 2008) .............................................................. 22

*Burgess v. Goldstein*,
  997 F.3d 541 (4th Cir. 2021) ................................................ 21, 22, 34

*Cavazos v. Smith*,
  565 U.S. 1 (2011) ............................................................................... 22

*Coleman v. Soccer Ass'n of Columbia*,
  69 A.3d 1149 (Md. 2013) ..................................................................... 19

*Dent v. United States*,
  142 S. Ct. 485 (2021) .......................................................................... 22

*Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*,
  3 F.4th 605 (4th Cir. 2021).................................................................. 21

*Est. of Moses ex rel. Moses v. Sw. Va. Transit Mgmt. Co.*,
  643 S.E.2d 156 (Va. 2007) .................................................................. 23

*Finch v. McRae*,
  147 S.E.2d 83 (Va. 1966) .................................................................... 39

*First Union Comm. Corp. v. GATX Cap. Corp.*,
  411 F.3d 551 (4th Cir. 2005) ........................................................ 21, 22

*Hall v. Hall*,
  397 S.E.2d 829 (Va. 1990) .................................................................. 25

*Hegwood v. Va. Nat. Gas, Inc.*,
  505 S.E.2d 372 (Va. 1998) .................................................................. 24

*Int'l Ground Transp. v. Mayor & City Council of Ocean City*,
  475 F.3d 214 (4th Cir. 2007) .............................................................. 21

*Jones v. Meat Packers Equip. Co.,*
   723 F.2d 370 (4th Cir. 1983) ............................................... 23

*Jones v. Rochelle,*
   479 S.E.2d 231 (N.C. Ct. App. 1997) ................................... 19

*Litchford v. Hancock,*
   352 S.E.2d 335 (Va. 1987) ........................................... 19, 24

*Rascher v. Friend,*
   689 S.E.2d 661 (Va. 2010) ..................................... 22, 23, 28

*Richardson v. Hackett,*
   134 S.E.2d 312 (Va. 1964) ................................................. 43

*Shelton v. Jones,*
   356 F.2d 426 (4th Cir. 1966) ............................................. 43

*Smith v. Va. Elec. & Power Co.,*
   129 S.E.2d 655 (Va. 1963) ................................................. 19

*Thomas v. Settle,*
   439 S.E.2d 360 (Va. 1994) ................................................. 23

*United States v. Mallory,*
   988 F.3d 730 (4th Cir. 2021) ............................................. 22

*Webb v. Smith,*
   10 S.E.2d 503 (Va. 1940) ................................................... 41

**Other Authorities:**

Restatement (Second) of Torts § 289 (1965) ........................... 25

## INTRODUCTION

This is a routine car wreck case. Karen Preston ran her school bus into the side of a tractor-trailer in an intersection because she failed to make sure the intersection was clear. A jury found that Ms. Preston was negligent, and that her negligence contributed to any injuries she suffered. Thus, under Virginia's contributory-negligence rule, the jury denied her any recovery.

On appeal, Ms. Preston only challenges the sufficiency of the evidence for causation—the jury's finding that her negligence contributed to her injuries. Her argument to this Court, however, is the same one that did not persuade the jury. In the light most favorable to the defendants, there was more than enough evidence for a reasonable jury to conclude that Ms. Preston's negligence—which she admits—was a contributing cause of the car wreck. Indeed, Ms. Preston's negligence, as the district court explained, was not a remote cause "by any stretch of the imagination." J.A. 762.

This case begins and ends with the standard of review. To win on appeal, Ms. Preston must prove that the jury verdict was irrational. It was anything but that. Three eyewitnesses testified that they could see

that the tractor-trailer would run the red light. The truck driver himself, realizing that it was too late to stop, was praying that Ms. Preston would see him. But she didn't keep a proper lookout. If she had, she would have seen what everyone else saw. And if she still couldn't see whether there was oncoming traffic, she had a duty to wait. In fact, Ms. Preston paid so little attention that she didn't pull out in front of the tractor-trailer but ran her bus into the side of the trailer itself. The tractor-trailer was already in the intersection before Ms. Preston was.

Ms. Preston had her day in court. She had a fair trial. She doesn't ascribe any error to the court's evidentiary or other trial or pretrial rulings. The jury just didn't agree with Ms. Preston's story. That mere disagreement with the jury's verdict is not an appellate issue.

## STATEMENT OF THE CASE

### A.    A Dangerous Intersection

The intersection of Wirtz Road and Route 220 is known in the community to be dangerous. J.A. 81, 86-87. Cars run the stoplight there "all the time." J.A. 81. The state saw fit to put flashing warning lights on Route 220 to help drivers better see the intersection, but "nobody pays any attention" to them. J.A. 87.

Another bus driver, who witnessed the accident, had earlier complained to the local school board about the dangers of that intersection. J.A. 88. In response, the school board had specifically instructed its bus drivers to be extra cautious at the intersection. J.A. 88. They asked the bus drivers to be sure that they can see any oncoming traffic before entering the intersection. J.A. 88. So even when the stoplight turns green, a bus driver still had to ensure that no one is running the light. J.A. 81. Ms. Preston received this caution. J.A. 317-18.

The intersection was just as dangerous on the day of the wreck. It was early in the morning, around 7 a.m. J.A. 76. It was still mostly dark, with the sun just beginning to rise. J.A. 76. The weather was clear. J.A. 269.

Ms. Preston drove a school bus down Wirtz Road and came to a stop at the intersection with Route 220. J.A. 269-70. She stopped at the stop bar—the stop line painted on the road—while she waited for her light to turn from red to green. J.A. 270. There were no cars in front of her. J.A. 270. Her bus was already full of students. J.A. 269. She had driven through this dangerous intersection "every morning and every evening" for the "past thirteen years." J.A. 268.

To Ms. Preston's left, coming toward her down Route 220, was a Walmart tractor-trailer driven by Mr. Grimes. J.A. 376-77. There were no cars in the intersection. J.A. 383. Mr. Grimes observed the sign cautioning about the intersection, but its lights were not flashing. J.A. 394. This was Mr. Grimes's perspective:



J.A. 438.

## B.    Ms. Preston's Negligence

At trial, Ms. Preston admitted that she breached the standard of care in two ways.

First, after Ms. Preston's light turned green, a reasonable person in Ms. Preston's position would have looked left, right, then left again before turning right into the intersection. J.A. 315-17. Ms. Preston admitted this was the standard of care. J.A. 314-17. But as soon as the light turned green, Ms. Preston started into the intersection. J.A. 142. Ms. Preston admitted that she breached that standard of care because she entered the intersection and started a right turn without looking left a second time. J.A. 337-38, 366.

Second, Ms. Preston admitted that she also breached the standard of care by making a blind turn onto Route 220. Ms. Preston testified that she was blinded by the glare of the sun when she looked left the first (and only) time, so she was never able to see the tractor-trailer or anything else coming from that direction. J.A. 312. Ms. Preston admitted that, even with a green light, it was "dangerous" to turn right into the inter-section if she was blinded by the sun and could not see whether traffic was still entering the intersection from her left. J.A. 313-14. In other words, because of the known danger of that intersection, it is not safe to depend only on the green light to determine whether it is reasonable to turn right. J.A. 309-10.

Ms. Preston admitted as much at her deposition, a video clip of which was played for the jury. J.A. 314 (playing clip), 424 (transcript of the same). To make a blind right turn at that intersection, a reasonable person would require some other indication that there was no oncoming traffic. J.A. 309-10, 313-14. Ms. Preston explained that she usually ensures that it is safe to enter that intersection by waiting for other, similarly positioned traffic to enter the intersection first. J.A. 305, 310. She testified that she believed that it was safe for her to turn right when her light was green because other traffic had entered the intersection. J.A. 305, 310, 337-38, 424.

In particular, there was a red car in the lane next to Ms. Preston, waiting to turn left at the intersection. J.A. 78, 271, 810. Ms. Preston testified that, when the light turned green for her bus and the red car, the red car went first and had already driven into the intersection when Ms. Preston entered the intersection. J.A. 309, 312. There was no reason for her to look left again, she explained, because the red car went first:

> Q.    But once you looked to your left initially, and you saw this car go out, you never looked back to your left again?
>
> A.    No.  I don't understand why would I would [sic].  At that point I felt that it was safe for me to

> go. I had a red[1] light. There was a car already
> out into the intersection. I don't know what else I
> could have needed for it to be okay for me to go. I
> had a light and a car in the middle of the intersec-
> tion.

J.A. 424 (transcript), 314 (clip played for jury).

After Ms. Preston's deposition, but before trial, dashcam footage was discovered, showing the wreck from the inside of Ms. Preston's bus. J.A. 304, 810.

The video showed that Ms. Preston's testimony about the red car was not true. The red car in the lane on Ms. Preston's left is visible in the video. J.A. 810. When Ms. Preston turns right onto Route 220, the red car is still sitting at the stoplight. J.A. 810.

At trial, the dashcam footage was played many times. *E.g.*, J.A. 84-86, 100, 274, 321, 338-40, 756. Ms. Preston was forced to admit that her deposition testimony about the movement of the red car was not true. J.A. 302, 309. Ms. Preston also tried walking back her testimony on the standard of care; she said there is no need to wait on other cars (like the

---

[1] Presumably this is an error in the transcript or else Ms. Preston misspoke and intended to say that she had a "green" light, which is not disputed.

red car) to venture across the intersection once she has a green light.  J.A. 305, 310.

## C.  Ms. Preston Crashed into the Tractor-Trailer

There was evidence introduced at trial that, had Ms. Preston not breached her standard of care, she would not have run into the tractor-trailer.

First, there was evidence that, had Ms. Preston waited on the red car to clear the intersection before she started moving, as Ms. Preston claimed during her deposition had happened, she would not have hit the tractor-trailer.  The dashcam video shows that, despite having a green light, the red car did not enter the intersection.  J.A. 810.  The standard of care at this dangerous intersection prohibited Ms. Preston from turning right until she could see whether traffic was coming from the left.  J.A. 309-10, 313-14.  Even if Ms. Preston could not see, because of the sun, she admitted that she should have waited for some indication that it was safe for her to make a blind right turn—like another car actually entering the intersection.  J.A. 305 (conceding that she made this admission at her deposition), 313.

Second, there was evidence introduced that Ms. Preston's failure to maintain a proper lookout caused her to collide with the side of the towed trailer. When Ms. Preston entered the intersection, the tractor-trailer *was already in the intersection*. J.A. 540. Ms. Preston did not pull out in front of the tractor-trailer—she T-boned it. J.A. 70, 155, 538. And she did not run into the front of the tractor-trailer; she collided with the trailer being towed by the truck, 21 feet back from the front of the truck. J.A. 70, 538. Below is the diagram created by the police officer who reported to the intersection shortly after the wreck:



J.A. 70.

Third, testimony from other witnesses showed that, had Ms. Preston looked to her left a second time, she would have known that the tractor-trailer would run the red light.

**Gladys Dunman.** Ms. Dunman was driving another school bus. She was in the lane to the left of Ms. Preston, immediately behind the red car, and waiting to turn left. J.A. 77-78. Ms. Dunman arrived at the stoplight when Ms. Preston did. J.A. 76-77. Ms. Dunman and Ms. Preston both had a good view because their buses sit higher than other cars, allowing them to see over other vehicles. J.A. 91. Ms. Dunman and Ms. Preston's buses were the same height. J.A. 91.

Ms. Dunman testified that there were no cars obstructing Ms. Preston's view to the left, up Route 220. J.A. 91-92. When Ms. Dunman looked left, she was not blinded by the sun. J.A. 89.

Instead, when she looked left, she saw the tractor-trailer and immediately recognized that it would run the stop light. J.A. 80, 89. She said aloud, "The truck is not going to stop." J.A. 89. She then grabbed her radio to yell a warning to Ms. Preston. J.A. 89-90. But by the time she had put the radio down, the collision had already occurred. J.A. 81, 89-90.

This diagram[2] shows the approximate positions of Ms. Preston and Ms. Dunman:



**Alexander Tyree.**  Mr. Tyree was an aide riding with Ms. Dunman on her special needs school bus.  J.A. 179.  He was seated on the driver's side behind Ms. Dunman.  J.A. 180.  He could see out the side windows of the bus.  J.A. 187, 189.  When he looked to the left, in the direction that

---

[2] This aerial diagram was admitted as an exhibit for Ms. Preston.  J.A. 59.  The labels for the eyewitnesses have been added in this brief for clarity.

the tractor-trailer was coming from, there was nothing obstructing his vision; he could see clearly. J.A. 187, 307. Mr. Tyree also saw that the tractor-trailer would run the red light. J.A. 89, 187-88.

So Mr. Tyree was a second person, similarly situated to Ms. Preston, who could see the tractor-trailer and could see that it would run the stop light:



**Perry Brown.** Mr. Brown was waiting to pull out of a nearby parking lot when the wreck happened. J.A. 140. Mr. Brown was facing up Route 220, the same direction that the truck was coming from. J.A. 148-49. He was in the same position as Ms. Preston, but the sun did not obstruct his view when he looked in the direction of the tractor-trailer. J.A. 148-49. Thus, Mr. Brown is the third comparator who shows that Ms. Preston would have seen the tractor-trailer, had she looked:



**The red car.**  The driver of the red car did not testify at trial.  The driver's actions, however, allowed the jury to infer that this driver also saw that the tractor-trailer would run the red light.  When the light turned green for the red car and the two bus drivers, the red car did not move into the intersection.  J.A. 90, 339-41, 810.  The red car is the fourth comparator.



**Stephen Chewning.**  Four years after the accident, accident re-constructionist Stephen Chewning visited the scene of the wreck.  J.A. 494-95.  His visit was on the same day of the year, at the same time of

the day, and in the same weather conditions as the wreck.  J.A. 494-95.

He stood in the same position as Ms. Preston's bus.  J.A. 496.  He looked

up Route 220, where the tractor-trailer had come from.  J.A. 495-96.  He

could see over a thousand feet away without the sun interfering with his

vision.  J.A. 496.  The same was true for Ms. Preston's own investigator.

J.A. 208, 496-97.

Mr. Chewning is the fifth comparator, and Ms. Preston's investiga-
tor the sixth, who testified that the sun did not interfere with Ms. Pres-
ton's vision.



## D.    The Collision

As the tractor-trailer approached the intersection with Wirtz Road, the stop light turned red, but Mr. Grimes thought it was green, so he continued into the intersection.  J.A. 145-46, 400.  The tractor-trailer passed through the intersection going between 40 and 45 miles per hour. J.A. 127, 144-45, 385.

After the tractor-trailer entered the intersection, Ms. Preston entered the intersection.  J.A. 540.  She started, stopped as if she saw something coming, then kept going.  J.A. 127.

Mr. Grimes saw Ms. Preston's bus starting to move into the intersection.  J.A. 398.  Mr. Grimes could see Ms. Preston's face as he approached.  J.A. 398.  He could see that she was not looking left, in his direction.  J.A. 398.  At that point, Mr. Grimes could not stop his tractor-trailer.  J.A. 396-97.  He was wishing that Ms. Preston would look at him so they could avoid a collision, but she didn't.  J.A. 398.  Mr. Grimes unsuccessfully tried to swerve left to avoid an impact.  J.A. 134, 399.

Ms. Preston then ran into the trailer part of the tractor-trailer.  J.A. 155, 538.  Ms. Preston never saw the tractor-trailer until she hit it.  J.A. 320-21.  She never tried to stop or brake.  J.A. 320-21.

Despite the size of the vehicles, and the speed of the tractor-trailer, the force of the collision was minor. Because Ms. Preston was turning right onto Route 220, in the same direction as the tractor-trailer was moving, the impact was of the "glancing, sideswiping type." J.A. 493. It was a "very low-severity crash." J.A. 637-38. The result was that the bus and the tractor-trailer collided against each other with a force equivalent to running into an object at five miles per hour. J.A. 667-68.

Although Ms. Preston later complained of pain from the collision, there was no medical evidence linking her complaints or purported injuries with the wreck. J.A. 643-44. There were only chronic, preexisting conditions. J.A. 643.

After the collision, emergency medical technicians arrived at the scene. When Ms. Preston was deposed, she testified that these EMTs helped her get off the school bus. J.A. 325. The dashcam video from the inside of the school bus, however, revealed that Ms. Preston walked herself off the bus with no assistance. J.A. 324, 810. A witness saw Ms. Preston walking around with no apparent injuries. J.A. 136.

## E.  Trial

The primary issue for trial was whether Ms. Preston was contributorily negligent.  The defendants admitted primary negligence—that Mr. Grimes had negligently run a red light.  J.A. 47 ¶ 11.

At the charge conference, Ms. Preston requested an instruction on last clear chance.  J.A. 756-57.  The district court denied the request because there was no evidence that the tractor-trailer had the last clear chance to avoid the accident.  J.A. 758-64.  Ms. Preston does not appeal the denial of that instruction.

The jury then returned a verdict for the defendants.  J.A. 674-75. The jury found that Ms. Preston was contributorily negligent:  she breached the standard of care and her negligence proximately caused her injuries, if any.  J.A. 674.

During and after trial, Ms. Preston moved for judgment as a matter law under Rule 50.  J.A. 735, 741, 777.  She argued that the evidence was legally insufficient to allow a reasonable juror to conclude that she was contributorily negligent.  The district court denied the motions.  J.A. 747, 803-07.  As the district court explained, Ms. Preston's "arguments amount to an assertion that a reasonable jury *could* have found that her

contributory negligence was not a proximate cause of her accident." J.A. 805. That may be, the court concluded, but that did not make the jury's verdict "wholly contrary to the law or the evidence." J.A. 805. Thus, Ms. Preston was not entitled to judgment as a matter of law just because a different jury might have agreed with her. *See* J.A. 805.

## SUMMARY OF THE ARGUMENT

This appeal involves the doctrine of contributory negligence. In Virginia, as in most states in this circuit,[3] a plaintiff may not recover for her injuries if they were caused in part by her own negligence. *Litchford v. Hancock*, 352 S.E.2d 335, 337 (Va. 1987). The negligence of the parties is never compared. *Id.*; *Smith v. Va. Elec. & Power Co.*, 129 S.E.2d 655, 659 (Va. 1963).

On appeal, Ms. Preston concedes that a reasonable jury could have found that she breached the standard of care and was therefore negligent. Her only argument is that her negligence could not have proximately caused her injuries. That is, she argues that the jury was *required* to agree with her. The district court rightly rejected that argument.

---

[3] North Carolina and Maryland also follow the contributory-negligence rule. *Jones v. Rochelle*, 479 S.E.2d 231, 235 (N.C. Ct. App. 1997); *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1150 (Md. 2013).

First, Ms. Preston's brief ignores one of the two ways in which she was negligent. Not only was Ms. Preston negligent for failing to look left a second time, but she was also negligent for making a blind right turn. According to Ms. Preston, the sun blinded her from seeing whether there was incoming traffic. Although there was evidence that the sun was not blinding, the jury could have believed Ms. Preston. In that case, Ms. Preston needed some other indication that it was safe to turn. She testified that she had, wrongly, believed that the red car's decision to proceed into the intersection was that indication. But the video evidence discredited that testimony. Because there was no actual indication that it was safe to turn, Ms. Preston's negligence in making a blind right turn proximately caused the accident.

Second, and as an independent basis to affirm, Ms. Preston's failure to look left a second time was also negligence that proximately caused the accident. The other drivers and witnesses at the intersection recognized that the tractor-trailer would run the stoplight. Ms. Preston was similarly situated to these other witnesses and drivers. Had Ms. Preston maintained a proper lookout, she would have seen what they saw. A reasonable person in Ms. Preston's shoes would have avoided the accident.

The evidence at trial was fairly one-sided on both points. But even if the evidence had painted a grayer picture, that would not be a reason to wrest the decision from the jury. The district court was right to let the jury verdict stand.

## ARGUMENT

### I.  The Standard of Review Is Highly Deferential.

The only issue on appeal is whether the district court erred by refusing to grant Ms. Preston judgment as a matter of law under Rule 50 of the Rules of Civil Procedure. Ms. Preston's motion asked the district court to hold that she was entitled to judgment because there was insufficient evidence to support the jury's verdict. Although this Court reviews the district court's denial of the motion de novo, it "do[es] so with deference towards the jury's findings." *Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021). The facts are viewed "in the light most favorable" to the defendants. *Id.* (quoting *First Union Comm. Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005)). "[E]very legitimate inference" is drawn in the defendants' favor. *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 610 (4th Cir. 2021) (quoting *Int'l Ground Transp. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 218-19 (4th

Cir. 2007)).  This Court will reverse the denial of a Rule 50 motion "only if" a reasonable jury could have agreed with Ms. Preston alone.  *Id.*

This standard of review does not allow a court to "weigh evidence" or "judge the credibility of witnesses." *Burgess*, 997 F.3d at 549 (quoting *First Union Comm. Corp.*, 411 F.3d at 556).  If reasonable minds could differ, a Rule 50 motion cannot be granted.  *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 365 (4th Cir. 2008).  In short, the Court "can set aside the verdict only if 'no rational trier of fact could have agreed with the jury.'"  *United States v. Mallory*, 988 F.3d 730, 736 (4th Cir.) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)), *cert. denied sub nom. Dent v. United States*, 142 S. Ct. 485 (2021).

Judicial deference to the jury's verdict is all the more appropriate under Virginia substantive law.  The Virginia Supreme Court has "stress[ed] the principle of tort litigation that issues of negligence and proximate cause ordinarily are questions of fact for the jury to determine, rather than questions to be determined by the trial court as a matter of law." *Rascher v. Friend*, 689 S.E.2d 661, 666 (Va. 2010).

That's no less true for contributory negligence, which acts as a complete bar to a plaintiff's recovery.  *Id.* at 664; *Jones v. Meat Packers Equip.*

*Co.*, 723 F.2d 370, 373 (4th Cir. 1983). Contributory negligence has two elements: negligence and proximate causation. *Rascher*, 689 S.E.2d at 664. On appeal, Ms. Preston challenges only the issue of proximate causation. Opening Br. at 13. Proximate causation, however, presents "a classic jury issue." *Est. of Moses ex rel. Moses v. Sw. Va. Transit Mgmt. Co.*, 643 S.E.2d 156, 161 (Va. 2007) (quoting *Thomas v. Settle*, 439 S.E.2d 360, 363 (Va. 1994)); *Rascher*, 689 S.E.2d at 665 ("As with questions of negligence, whether an act was a proximate cause of an event is best determined by the jury. . . . This is so simply because the particular facts of each case are critical to that determination." (citations omitted)).

As explained below, the jury's verdict was not irrational. In fact, it is hard to imagine how a jury could have decided the case for Ms. Preston on this record.

## II. The Evidence Supports a Jury Finding that Ms. Preston Proximately Caused the Accident by Making a Blind Right Turn.

Ms. Preston was negligent in two respects. First, she turned right even though—according to her—she was blinded by the morning sun and couldn't see whether there was oncoming traffic. Second, she failed to

look left a second time before pulling out, flouting her training and breaching the standard of care.

On appeal, Ms. Preston does not address her blind right turn. That is reason enough to affirm. After all, the jury could have credited Ms. Preston's testimony that the sun blinded her, discounting the testimony of witnesses who did not think the sun was blinding. Even so, the jury could have still found Ms. Preston negligent for making a blind right turn and found that such negligence contributed to the crash.

The evidence would support that factual finding. Ms. Preston testified that she was blinded by the sun and could not see "anything" when she looked to her left. J.A. 312. Ms. Preston knew that this was a dangerous intersection, where people routinely run the red light. J.A. 309-10, 313-14. The school board had warned its bus drivers of the danger from cars running this stoplight. J.A. 88.

This was negligence. A driver with the right of way has no "right to assume" that cross traffic will yield the right of way. *Litchford*, 352 S.E.2d at 337-38. Instead, she has a duty to use her knowledge of the danger of this intersection so that she would avoid colliding with a car running the light. *See Hegwood v. Va. Nat. Gas, Inc.*, 505 S.E.2d 372,

377 (Va. 1998); *Hall v. Hall*, 397 S.E.2d 829, 831 (Va. 1990); Restatement (Second) of Torts § 289 (1965). Even if Ms. Preston were blinded by the sun, the jury could have found that she was negligent because a reasonable person would have recognized that her "perception of the surrounding circumstances" was "imperfect," thus requiring her to "mak[e] further investigation." Restatement (Second) of Torts § 289 cmt. j.

At trial, Ms. Preston admitted that she made no such investigation. By contrast, at her deposition, she justified her leap of faith by claiming that she knew the intersection was clear because the red car had already driven across it. The dashcam video later proved that wrong. Still, Ms. Preston insisted at trial that she had believed *at the time* that the red car did so, and that she had apparently been "mistaken." J.A. 309, 312, 337-38, 424. The jury could have concluded that this "mistaken" impression—if that's what it was—amounted to negligence.

The jury could have also concluded that Ms. Preston's decision to make a blind right turn contributed to the accident. Had she waited for a clean line of sight or waited for the red car to *actually* move through the intersection, she would not have crashed into the side of the tractor-

trailer.  After all, *the red car* didn't move, and consequently wasn't involved in the accident.

The jury wasn't specially asked exactly how it found Ms. Preston to be negligent, or how it found that negligence contributed to the accident. Since the jury's verdict was supported by the evidence showing that Ms. Preston's blind right turn negligently contributed to her injuries, it must be upheld on appeal.

## III. The Evidence Supports a Jury Finding that Ms. Preston Proximately Caused the Accident by Failing to Look Left Again Before Turning.

On appeal, Ms. Preston ignores her negligence in making a blind right turn.  Instead, she focuses solely on her failure to look left a second time before turning right onto Route 220.

She admits that the evidence supported a jury finding that this was negligence.  She insists, though, that a second look left would not have mattered.  Had she done so, she argues, she would have seen a distant truck that was slowing down.  Seeing that, she still would have turned right, and still would have wrecked into the side of the tractor-trailer. Thus, she contends, her failure to look left a second time did not proximately cause the accident.

Or so the argument goes. There was, however, plenty of evidence suggesting otherwise.

First, Ms. Preston acknowledges that the other witnesses saw the truck and were not blinded by the sun. Opening Br. at 5-7. She therefore allows—as she must—for the possibility that she would have seen the truck had she looked left again. *Id.* at 14-16. Thus, the jury's task was to reconstruct what Ms. Preston would have seen and decide whether a reasonable person in her shoes would have avoided crashing into the side of the tractor-trailer.

To that end, the jury was provided with a range of possible distances and speeds, and it was free to find that the truck was closer and traveling faster than Ms. Preston hypothesizes on appeal. Or, perhaps the jury credited the evidence it heard from multiple comparators, all of whom testified that they knew the truck would run the light, and none of whom drove into the intersection in disregard of the risk. Or the jurors could have just relied on the fact that *Ms. Preston* crashed into the trailer, not the other way around, as evidence of causation.

Based on that evidence, the question for the jury under Virginia law was whether the plaintiff "actually saw or had the opportunity to see the

defendant's vehicle, but failed to maintain a proper lookout, and that this negligence was a proximate cause of [her] injuries." *Rascher*, 689 S.E.2d at 665. If the plaintiff "would have been able to avoid the accident" by maintaining a proper lookout, she is barred from recovering anything. *Id.* Thus, the defendant will prevail if he shows "that the plaintiff reasonably should have seen the defendant and could have easily avoided the collision, but was inattentive." *Id.* After all, "once a plaintiff realizes, or in the exercise of ordinary care should have realized, that a defendant is not using reasonable care," the plaintiff must act to avoid the accident. *Id.*

Thus, the question on appeal is whether this jury acted irrationally in concluding that the evidence showed that Ms. Preston reasonably should have looked left and then decided not to drive her bus into the side of the truck. It makes no difference whether the evidence could have supported a different verdict, since on appeal the evidence must be taken in the light most favorable to the defendants.

A closer look at the evidence shows why the district court properly refused to overturn the jury's verdict.

### A. Had Ms. Preston looked left a second time, she would have seen the tractor-trailer already in the intersection.

The accident-reconstruction evidence at trial was math-heavy.  On appeal, Ms. Preston misunderstands that math and makes some assumptions that are favorable to her, contrary to the standard of review.  On that basis, Ms. Preston concludes that had she looked left, she would have seen "a tractor-trailer at least 268 to 330 feet away, driving below the speed limit," which would not have put her on notice that it would run the red light.  Opening Br. at 15.

But the evidence suggested that the front of the truck could have been *much* closer at the moment Ms. Preston would have pulled out, had she looked left a second time.  The jury was free to decide that a reasonable person in Ms. Preston's shoes would not have pulled out into the intersection.

At trial, the defendants' accident reconstructionist began with a calculation of how far the truck traveled between the time Ms. Preston started to turn and the moment of the collision.  The dashcam video showed that Ms. Preston began her right turn 4.38 seconds before the collision.  J.A. 539.  As the defendants' expert explained, the standard

"perception and reaction" time—the time it would have taken Mr. Grimes to notice Ms. Preston pulling out and react by pressing the brake—is 1.5 seconds (0.75 seconds to perceive, and another 0.75 seconds to react). J.A. 524. The truck then decelerated for the balance of the time until the collision. J.A. 534. Other evidence showed that the truck was traveling between 40 and 55 miles per hour when Ms. Preston's bus began pulling out. J.A. 523. The accident-reconstruction expert put all this together and estimated that the truck traveled "somewhere between 235.5 and 330.7 feet"—for starting speeds between 40 and 55 m.p.h.—after Ms. Preston began pulling into the intersection. J.A. 523.

That range, however, is *not* how far away the truck would have been from Ms. Preston had she looked left a second time. *That* distance requires three adjustments to be made. The jury may have accounted for some or all of those adjustments in assessing the evidence.

First, Ms. Preston did not run into the front of the tractor-trailer. She ran into the side of the trailer itself, at least 21.1 feet back on the right side. J.A. 70, 155, 538. In other words, the front of the truck wasn't "between 235.5 and 330.7 feet" from the place of impact when Ms. Preston

pulled out—it was 21.1 feet *closer* than that. At trial, Ms. Preston admitted the need for this adjustment. J.A. 531.

Second, Ms. Preston did not hit the truck directly in front of her turn lane. Instead, when Ms. Preston was still sitting at her stop bar—before she began moving—she was further up Route 220 and therefore closer to the truck. Using the scaled diagram prepared by the accident reconstructionist, it appears that Ms. Preston was some 46 feet closer to the tractor-trailer before she began moving:



J.A. 456 (modified to show estimation using scale), 489.

Finally, it would have required additional time for Ms. Preston to look left again and perceive the truck's position and speed—about 0.75 seconds, even without accounting for the additional 0.75 seconds in reaction time. J.A. 524. The truck would have kept moving during that time—another 44 feet at 40 m.p.h. (or more at a higher speed). *See* J.A. 737-38.

As Ms. Preston admits in her brief, the jury was tasked with figuring out a hypothetical: "what Ms. Preston would have seen had she looked left a second time." Opening Br. at 11. The evidence allowed the jury to combine the distance range provided by the accident-reconstruction expert with some or all of these adjustments. To that end, the jury could have concluded that, had Ms. Preston looked left a second time, the tractor-trailer would have been about 124 feet from Ms. Preston when she began moving:

| | |
|---|---|
| 235 ft | distance to point of impact |
| -21 ft | (distance between impact site and front of truck) |
| -46 ft | (adjustment for Ms. Preston's starting position) |
| -44 ft | (distance due to perception time) |
| 124 ft | |

That is, the evidence supported a conclusion that Ms. Preston would have seen a tractor-trailer about 124 feet away and traveling around 40 miles per hour. But 124 feet is also about how far the *tractor-trailer's stop bar* was from Ms. Preston's bus. That is, had she looked left, Ms. Preston would have seen the truck *already* in the intersection:



J.A. 456 (modified to show tractor-trailer 124 feet from Ms. Preston's starting position).

On appeal, Ms. Preston cherry-picks 268 feet as the minimum distance from the truck to her bus had she looked left again, Opening Br. at 15 & n.2, but that figure is not correct.

First, that figure was based on Ms. Preston's assumption that the truck was traveling at a speed of 45 m.p.h. when she began her turn. The evidence, however, showed that the truck could have been moving as slow as 40 m.p.h. J.A. 385 (Grimes testifying that he was going below 45 miles per hour), 144-45 (Brown testifying that the tractor-trailer was going between 40 and 45 miles per hour); *see also* Opening Br. at 15 n.2 (mistakenly claiming that the accident-reconstruction expert agreed that 268 feet was the minimum distance, citing the expert's testimony *based on counsel's hypothetical in which the truck was traveling at a speed of 45 m.p.h.*). The standard of review requires the evidence to be taken in the light most favorable to the defendants, not to Ms. Preston. *See Burgess*, 997 F.3d at 549.

Second, Ms. Preston recognizes, as she must, that the expert's estimated distance to the truck was measured "from the point of collision," not from Ms. Preston's starting position at her stop bar. *See, e.g.*, Opening Br. at 15 & n.2 (stating as much three separate times). But she then

ignores the approximately 46 feet that Ms. Preston's bus traveled down the highway before crashing into the side of the trailer.

Finally, Ms. Preston could not have looked left again, assessed the situation, and began pulling out instantaneously. Yet, she fails to allow for *any* time to elapse during her hypothetical second look to the left, and therefore fails to account for the further approach of the truck during that time.

Even if Ms. Preston's math were right, though, it was up to the jury to decide whether a reasonable person would have felt safe pulling out in front of a tractor-trailer that far away going that speed at a dangerous intersection. Ms. Preston provides no standard by which a court could jettison the jury's view of that scenario.

In other words, even if Ms. Preston's preferred distance of 268 feet and preferred truck speed of 45 m.p.h. were correct, the jury could have found that a reasonable person would still have waited. That is because the truck would have been a mere 85 feet from its stop bar—about one truck length—as the following scaled diagram shows:



**85 FEET**

J.A. 456 (modified to show position of tractor-trailer 268 feet back from the point of impact).

Because the truck was traveling at 45 miles per hour, in Ms. Preston's view of the evidence, it would have needed at least 228 feet to stop, yet only had 85 feet to do so. J.A. 526. Thus, the jury could have found that a reasonable person would have recognized that the tractor-trailer would run the red light because it was physically impossible for it to do anything else.

In the end, it isn't the job of the courts to second-guess any calculations or assumptions the jury made in coming to its conclusion. The sole

question is whether the jury acted irrationally on this evidentiary record. It did not.

## B. A reasonable person would have recognized what the other eyewitnesses recognized.

Of course, the jury might not have done any math at all. The jury may instead have simply relied on the testimony of the many eyewitnesses, who all correctly recognized that the tractor-trailer would run the light.

Although Ms. Preston claimed that the sun was blinding that morning (yet pulled out anyway), other eyewitnesses contradicted that testimony, explaining that there was no sun glare. *E.g.*, J.A. 89 (Dunman), 187 (Tyree), 148-49 (Brown).

As shown in the background section of the brief, there were many people with a clear view up Route 220, who were all similarly situated to Ms. Preston, and who could tell that the truck would run its stoplight:



Chief among the comparators is Gladys Dunman. Ms. Dunman was sitting at the same stop light, immediately beside Ms. Preston, and driving a school bus of the same height. J.A. 76-78, 91. Ms. Dunman was planning to turn left after the car in front of her moved, J.A. 77-78, so she was looking in the same direction as Ms. Preston should have been looking. J.A. 89-92.

On appeal, Ms. Preston disputes whether Ms. Dunman was similarly situated. She argues that, at the point when Ms. Dunman perceived the tractor-trailer, Ms. Preston had started moving. Opening Br. at 20-

21.  But that point is irrelevant.  When Ms. Dunman saw the tractor-trailer, it was around 30 to 40 feet back from its stop bar.  J.A. 80.  As just explained, had Ms. Preston looked left a second time, under her own argument, she should have already seen the tractor-trailer, when it was 85 feet from the stop bar.  *See supra* Argument § III.A.  A jury could have reasonably inferred that these positions were close enough that a reasonable person in Ms. Preston's position would have recognized what Ms. Dunman recognized:  that the tractor-trailer would run the stoplight.

Ms. Preston also attacks the verdict by reference to *Finch v. McRae*, 147 S.E.2d 83 (Va. 1966), but she overlooks the different procedural posture of that case, as well as a key factual distinction.

In *Finch*, the defendant had pushed his stalled vehicle onto the road, and just on the other side of a hill.  *Id.* at 85.  The plaintiff was driving toward the defendant, coming from the other side of the hill, and she didn't see the defendant's car.  *Id.* at 85-86.  When the plaintiff crested the hill, she saw the defendant, but it was too late to avoid a collision:  "I saw [the defendant's vehicle] when I first could see it."  *Id.* at 85.

A police officer reported to the scene. He stood near the bottom of the hill, on the side the plaintiff had come from, and observed that from one spot he could see the wrecked car, but from another spot he could not, due to the crest of the hill. *Id.* at 86.

The plaintiff sued, and the defendant raised contributory negligence as a defense, arguing that the plaintiff would have seen the defendant had she kept a proper lookout. *Id.* at 87. The jury returned a verdict for the plaintiff, but the trial court set it aside and entered judgment for the defendant. *Id.* at 86.

On appeal, the Supreme Court of Virginia reversed, reinstating the jury's verdict. *Id.* at 88. Like Ms. Preston, the defendant in *Finch* insisted that the jury was legally obliged to agree with him. *Id.* at 86-87. But the Court disagreed, finding that the evidence was legally sufficient for the jury to agree with the plaintiff. *Id.* at 87. The jury was free to disagree with the officer's testimony and to agree with the plaintiff's testimony that she saw and reacted to the defendant's vehicle as soon as it was possible to do so. *Id.* at 87.

The jury was also not legally required to agree that the police officer was similarly situated to the plaintiff. *Id.* Whereas the officer was

"standing in the road," the plaintiff was "seated behind the wheel of her automobile." *Id.* Thus, their lines of vision "may" have been different. *Id.* The officer "may" have also been standing at a different height than the plaintiff was sitting at in her car. *Id.* The jury had the chance to consider the height differences, so it "may have reasonably concluded" that the two were not similarly situated. *Id.* The jury, however, was not legally required to decide the matter one way or the other. *See id.*

So too here. The evidence was enough for the jury to decide for itself whether Ms. Dunham was similarly situated to Ms. Preston. Unlike in *Finch*, Ms. Dunham was sitting in a school bus just like Ms. Preston's. J.A. 91. And Ms. Dunham specifically testified that the two were perched at the "same height" in their buses. J.A. 91.

Ms. Preston also relies on *Webb v. Smith*, 10 S.E.2d 503 (Va. 1940). But as the district court explained, the case is "completely distinguishable." J.A. 744.

In *Webb*, the plaintiff was following behind a school bus on an icy road. 10 S.E.2d at 504. When the bus came to a slow, gradual stop to pick up a student, the plaintiff rear-ended the bus. *Id.* The bus's brake lights were working, but the plaintiff failed to see them. *Id.* The plaintiff

then sued the bus driver, and the jury returned a verdict for the plaintiff. *Id.* at 503-04.

The Court held that the bus driver was not negligent and that, if anything, it was the plaintiff's contributory negligence, in failing to keep a proper lookout, that caused the accident. *Id.* at 505-06. The Court also held in the alternative that, even if the bus driver should have looked in his rear-view mirror, nothing would have indicated to the bus driver that he should not pick up the student. *Id.* at 506.

The holdings of *Webb* support the defendants. Ms. Preston was not entitled to judgment because she was contributorily negligent—had she kept a proper lookout, there would have been no accident.

Likewise, the causation holding of *Webb*, and its fact-bound nature, offer no support to Ms. Preston. As just explained in great depth, had a reasonable person in Ms. Preston's shoes looked left a second time, she would have seen the tractor-trailer either running the red light or just about to do so. By contrast, the bus driver in *Webb* would have been right to conclude that the plaintiff saw the bus coming to a gradual stop and would have himself stopped. *Id.* Indeed, courts following *Webb*, includ-

ing this Court, recognize the key principle is that courts should let contributory negligence be decided by the jury. *See, e.g., Shelton v. Jones*, 356 F.2d 426, 428 (4th Cir. 1966) ("[Defendants] each acted with due care, but reasonable men might also infer that . . . proper lookouts should have produced earlier recognition of danger and earlier action of avoidance."); *Richardson v. Hackett*, 134 S.E.2d 312, 315 (Va. 1964).

\* \* \*

This car-wreck case is fact intensive. The jury was showered with evidence that Ms. Preston was negligent and that her negligence proximately caused the accident. The jury did its duty when it rendered a judgment for the defendants. Ms. Preston has presented no reason for reversing their verdict.

## CONCLUSION

For the reasons set forth above, the judgment of the district court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

The defendants agree with Ms. Preston that there is no need for oral argument. Oral argument is appropriate for hard or close cases. This is neither.

Respectfully submitted,

/s/ Troy D. Shelton
Troy D. Shelton
Matthew Nis Leerberg
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments), this document contains 7,603 words.

2.    This document complies with the typeface requirements because it has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: January 27, 2022       Respectfully submitted,

                          /s/ Troy D. Shelton
                          Troy D. Shelton